# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:10-cr-0396-SI |
| v. | **OPINION AND ORDER** |
| **ALEKSANDER GORBATENKO**, | |
| Defendant. | |

Billy J. Williams, Acting United States Attorney, Jeffrey S. Sweet, Assistant United States Attorney, United States Attorney's Office for the District of Oregon, 405 East 8th Avenue, Suite 2400, Eugene, OR 97401. Of Attorneys for the United States.

Rosalind M. Lee, ROSALIND MANSON LEE, LLC, 245 East 4th Avenue, Eugene, OR 97401. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Aleksander Gorbatenko filed a motion under 18 U.S.C. § 3582(c)(2) seeking a two-level reduction of his sentence based on United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") Amendment 782. The United States opposes this motion, arguing that Defendant is ineligible for a sentence reduction under Amendment 782 because Defendant's original sentence is lower than his amended guideline range and thus under the Sentencing Commission's policy statement U.S.S.G. § 1B1.10, Defendant is not eligible for a reduction. Defendant argues

PAGE 1 – OPINION AND ORDER

that the provisions of this policy statement contradict one another, are contrary to the Sentencing Commission's statutory directive, and violate the United States Constitution. Defendant further argues that under the doctrine of constitutional avoidance, the Court should interpret § 1B1.10 in a manner consistent with Defendant's interpretation. On November 20, 2015, the Court held oral argument on this motion and motions in two other cases asserting similar arguments.[1] For the reasons that follow, Defendant's motions are denied.

## STANDARDS

### A.  Sentence Reduction under 18 U.S.C. § 3582

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Congress provided a narrow exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also Dillon*, 560 U.S. at 825 (noting that "§ 3582(c)(2) does not authorize a sentencing or resentencing proceeding" but instead provides for the "'modif[ication of] a term of imprisonment' by giving courts the power to reduce an otherwise final sentence in circumstances specified by the Commission") (alteration in original). This authority to modify a previously-imposed prison sentence "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines." *Dillon*, 560 U.S. at 828.

Congress has given the Sentencing Commission a "substantial role . . . with respect to sentence-modification proceedings." *Id.* at 826. Congress has charged the Sentencing

---

[1] *United States v. Jose Carranza Gonzalez*, Case No. 12-cr-0154-SI, and *United States v. Bernardo Contreras Guzman*, Case No. 12-cr-0291-SI. Defendant incorporated by reference the arguments asserted in *Guzman* and those arguments are addressed herein.

Commission "both with deciding whether to amend the Guidelines, and with determining whether and to what extent an amendment will be retroactive." *Id.* (citation omitted); *see also* 28 U.S.C. § 994(u) ("If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."). Thus, courts are "constrained by the Commission's statements dictating 'by what amount' the sentence of a prisoner serving a term of imprisonment affected by the amendment 'may be reduced.'" *Dillon*, 560 U.S. at 826 (quoting 28 U.S.C. § 994(u)).

In § 3582(c), Congress specifically required that any sentence modification be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A)(ii), 3582(c)(2); *see also Dillon*, 560 U.S. at 821 ("Any reduction [pursuant to § 3582(c)(2)] must be consistent with applicable policy statements issued by the Sentencing Commission."). The policy statement governing sentencing modifications after a retroactive amendment to the Guidelines instructs courts not to reduce a term of imprisonment if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. Manual § 1B1.10(a)(2)(B).

In deciding a motion under § 3582(c)(2), a court must follow a two-step process. "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. This requires determining the amended guideline range, which is the range that would have been applicable to the defendant if the amendment had been in effect at the time of the defendant's original sentencing. *Id.*; *see also* § 1B1.10(b)(1). In making this determination, courts are to substitute only the new amendment "for the

corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1); *see also Dillon*, 860 U.S. at 827. The Sentencing Commission further limited application of a retroactive Guidelines amendment by instructing that a court cannot reduce a sentence "to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection," with the exception of making a reduction that is comparable to what was made at the time of original sentencing as a result of "a government motion to reflect the defendant's substantial assistance to authorities . . . ." § 1B1.10(b)(2); *see also Dillon*, 560 U.S. at 827 (discussing a previous version § 1B1.10(b)(2) that allowed a court to apply comparable departures and variances as were applied at the original sentencing and noting this instruction was "[c]onsistent with the limited nature of § 3582(c)(2) proceedings"). Step two of the § 3582(c) inquiry is to consider any applicable § 3553(a) factors and determine, in the discretion of the Court, whether any reduction authorized by the Guidelines amendment is warranted in whole or in part. *See Dillon*, 560 U.S. at 827; 18 U.S.C. § 3582(c)(1)(A).

"This circumscribed inquiry [under § 3582(c)(2)] is not to be treated as a 'plenary resentencing proceedings.'" *United States v. Navarro*, 800 F.3d 1104, 1110 (9th Cir. 2015) (quoting *Dillon*, 560 U.S. at 826). The appropriate use of sentence-modification under § 3582(c)(2) "'is to adjust a sentence in light of a Guidelines amendment,' so courts may not use such proceedings to 'reconsider [] a sentence based on factors unrelated to a retroactive Guidelines amendment.'" *Id.* (quoting *United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011)).

## B.  Equal Protection under the United States Constitution

"When the Commission enacts Guidelines treating one class of offenders differently from another, equal protection generally requires that the classification be 'rationally related to a

legitimate government interest.'"[2] *Navarro*, 800 F.3d at 1113 (quoting *United States v. Ruiz-Chairez*, 493 F.3d 1089, 1091 (9th Cir. 2007)). If the classification implicates a fundamental right or a suspect classification, the Sentencing Commission's decision would be subject to a higher level of scrutiny. *Id.* at 1113 n.7. Defendant argues that because his liberty is at stake, heightened scrutiny is appropriate. This argument, however, is foreclosed by the Ninth Circuit's decision in *Navarro*, which noted that rational-basis review is generally applied when the Guidelines treat classes of offenders differently and applied rational-basis review in considering constitutional challenges to § 1B1.10. *Id.* at 1113. The Court is bound by this precedent.

A classification is rationally related to a legitimate government interest "if there is any *reasonably conceivable* state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (emphasis added). Under rational-basis review, the burden is on the party seeking to disprove the rationality of the relationship between the classification and the purpose, and that party must "negative every conceivable basis which might support" the classification "whether or not the basis has a foundation in the record." *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (quotation marks and citations omitted). Thus, courts are to accept generalizations regarding the rational basis, "even when there is an imperfect fit between means and ends" and even if the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Id.* at 321 (quotation marks and citation omitted).

---

[2] As noted by the Ninth Circuit, the Guidelines technically are not governed by the Equal Protection Clause of the Fourteenth Amendment, which applies only to states, but the Due Process Clause of the Fifth Amendment "similarly prohibits unjustified discrimination by federal actors" and the "'approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.'" *Navarro*, 800 F.3d at 1112 n.6 (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

# BACKGROUND

## A. History of Relevant Guidelines Amendments

In 2010, Congress passed the Fair Sentencing Act ("FSA") to "restore fairness to Federal cocaine sentencing." Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). Among other provisions, the FSA reduced the disparity between the amount of crack cocaine and powder cocaine needed to trigger mandatory minimum sentences and gave the Sentencing Commission the authority to amend the Guidelines to reflect the statute's changes. *Id.* §§ 2, 8. Pursuant to this authority, in 2011 the Sentencing Commission promulgated Amendment 750, which, among other things, reduced base offense levels for certain crack-cocaine-related offenses. U.S.S.G. Manual App'x C, Amend. 750, Part A (2011). The Sentencing Commission gave Amendment 750 retroactive effect. U.S.S.G. Manual App'x C, Amend. 759 (2011).

In 2011, the Sentencing Commission also amended §1B1.10, its policy statement applicable to sentence reductions as a result of an amended guideline range. As relevant here, the Sentencing Commission amended §1B1.10(b)(2)(B), which provides the exceptions to § 1B1.10(b)(2)(A)'s general prohibition against reducing a sentence below the amended guideline range. The previous version stated:

> Exception.—If the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate. However, if the original term of imprisonment constituted a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005), a further reduction generally would not be appropriate.

U.S.S.G. Manual § 1B1.10(b)(2)(B) (2010). This allowed defendants who received below-guidelines departures or variances at their original sentencing to receive a comparable reduction below the amended guideline range in a sentence-modification proceeding.

The 2011 amended version of § 1B1.10(b)(2)(B) removed the sentence-modification judge's discretion to consider any variances or departures other than a departure for substantial assistance.[3] The amended version states:

> Exception for Substantial Assistance.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

U.S.S.G. Manual § 1B1.10(b)(2)(B) (2011). This is the version that is currently effective.

On November 1, 2014, the Sentencing Commission issued Amendment 782 to the Guidelines. U.S.S.G. Manual App'x C, Amend. 782 (2014). Amendment 782 reduces base offense levels by two for certain drug crimes, including the crimes of which Defendant was convicted. The Sentencing Commission also amended a portion of § 1B1.10, in a manner not relevant to this case.

**B.  Defendant's Sentencing Information**

On January 2, 2013, Defendant entered into a plea agreement with the government. Defendant agreed to plead guilty to a racketeering conspiracy with drug trafficking predicates in violation of 18 U.S.C. § 1962(d), a drug trafficking conspiracy in violation of 21 U.S.C. §§ 841(a)(1)(C) and 846, and money laundering in violation of 18 U.S.C. § 1956(h). The parties agreed to a base level offense of 34, a two-level upward adjustment for Defendant's role as an organizer or leader (pursuant to U.S.S.G. §3B1.1(c)), a two-level upward adjustment for money laundering (pursuant to U.S.S.G. § 2S1.1(B)(2)(b)), and a three-level downward adjustment for acceptance of responsibility. This resulted in an offense level of 35. The parties further agreed to

---

[3] Departures other than a departure for substantial assistance are also referenced herein as "non-cooperation departures."

a four-level downward variance pursuant to early resolution of a complex case and consideration of the §3553(a) factors. This resulted in an offense level of 31. Defendant's plea agreement contemplated a criminal history category of II, although Defendant's presentence report found a criminal history category of III. The Court applied a criminal history category of II in Defendant's original sentencing. Offense level 31 with a criminal history of II resulted in a sentencing range of 121 to 151 months. Defendant was sentenced to 126 months.

If Amendment 782 had been in effect, Defendant's base offense level would have been 32 instead of 34. Adding the two-level upward adjustment for his role as a leader and two-level upward adjustment for money laundering, and subtracting his three-level adjustment for acceptance of responsibility, Defendant's adjusted offense category under Amendment 782 would have been 33. The next step is where the parties disagree. The government asserts that because § 1B1.10(b)(2) states that a sentence may not be further reduced except for a reduction based on substantial assistance, which does not apply in this case, under Amendment 782 Defendant's amended offense level is 33, with a corresponding amended guideline range of 151 to 188 months. Thus, concludes the government, because Defendant was originally sentenced to 126 months, which is "less than the minimum of the amended guideline range," § 1B1.10(b)(2) prohibits the Court from reducing Morales's sentence.

Defendant argues that his original sentencing determination should remain unaffected, except for reducing his offense level by two pursuant to Amendment 782. Thus, Defendant argues his amended offense level is 29. With a criminal history category of II, his amended guideline range is 97-121 months. Defendant moves to have his sentence reduced to 97 months.

## DISCUSSION

Defendant argues that in having his sentence modified under Amendment 782, he should continue to receive the benefit of the downward variances that were negotiated and agreed-upon

in his plea agreement and applied by the Court in his original sentencing. Defendant asserts that the government's interpretation of § 1B1.10(b)(2) as requiring that courts may not apply variances and non-cooperation departures in sentence-modification proceedings is unlawful because: (A) variances and departures are "guideline application decisions" that are specifically instructed to be left "unaffected" under § 1B1.10(b)(1) and are therefore included in calculating the "amended guideline range"; (B) the requirement as interpreted by the government is contrary to the Sentencing Commission's statutory directive; (C) the requirement as interpreted by the government violates equal protection; and (D) under the doctrine of constitutional avoidance, if the Court finds "serious questions" as to the constitutionality of § 1B1.10(b)(2) as interpreted by the government, the Court should interpret the provision as including departures and variances, as interpreted by Defendant.

## A. Whether Variances and Departures are "Guideline Applications Decisions"

Section 1B1.10(b)(1) instructs that when considering a sentence modification pursuant to a retroactive Guidelines change, the changed provision is incorporated and "all other guideline application decisions" are to remain unaffected. Defendant argues that variances and departures are "guideline application decisions" that must remain unaffected. Thus, argues Defendant, the government's interpretation of § 1B1.10(b)(2)(A) to limit a court's ability to reduce a sentence below the amended minimum guideline range after the applicable Guidelines amendment is applied is contrary to § 1B.10(b)(1)'s directive to keep all other "guideline application decisions" unaffected.

A "departure" is a divergence from the originally calculated sentence range based on a specific Guidelines departure provision, whereas a "variance" is a divergence from the Guidelines range based on an exercise of the Court's discretion under § 3553(a). *See United States v. Fumo*, 655 F.3d 288, 317 (3d Cir. 2011), *as amended* (Sept. 15, 2011). Defendant

argues that variances and departures are "guideline application decisions" and thus are required to be applied after Amendment 782 is employed to lower the base offense level, resulting in an "amended guideline range" that includes the originally-applied departures and variances.

The phrases "guideline application decision" and "amended guideline range," in isolation, may be ambiguous as to whether they include departures and variances. When considering the full text of § 1B1.10, its commentary, the text of its previous version, and applicable case law, however, it is evident that these phrases do not include variances and departures.

### 1. Text and context of current version of § 1B1.10

The interpretation that departures and variances are not "guideline application decisions" and thus are not included in the "amended guideline range" is consistent with the text and context of § 1B1.10. If departures and variances were "guideline application decisions" that were part of the "amended guideline range," then § 1B1.10(b)(2)(B) would contain surplusage. Section 1B1.10(b)(2)(B) creates an exception allowing a reduction below the "amended guideline range" based on substantial assistance, as long as such a reduction was part of the original sentencing pursuant to a government motion. If departures and variances were "guideline application decisions" that had to remain unaffected under § 1B1.10(b)(1) and were therefore included in the "amended guideline range," then there would be no need to create a specific exception to allow a reduction in a sentence-modification proceeding for substantial assistance. Under Defendant's interpretation, the substantial assistance reduction would necessarily be included in the sentence modification as a "guideline application decision" and the exception created in § 1B1.10(b)(2)(B) would be superfluous, and arguably meaningless. Defendant's interpretation is contrary to "the canon of construction that courts interpret statutes so as not to render any section meaningless." *Meng Li v. Eddy*, 324 F.3d 1109, 1110 (9th

Cir. 2003) (citing *Beck v. Prupis*, 529 U.S. 494, 506 (2000)); *see also United States v. Harrell*, 637 F.3d 1008, 1010-11 (9th Cir. 2011) (noting that courts must give effect to each word and "must 'mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous'" (alteration in original) (quoting *United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003) (en banc))).

The government's interpretation is also consistent with the Guidelines' definition of "departure." Under the Guidelines, "departure" is an "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence." U.S.S.G. Manual § 1B1.1, Application Note 1(E). The Supreme Court similarly has defined "departure" as creating a non-Guidelines sentence. *See Irizarry v. United States*, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.").

Additionally, this interpretation is consistent with the commentary to § 1B1.10. The Guidelines commentary "is akin to an agency's interpretation of its own legislative rules" and if it "does not violate the Constitution or a federal statute, it must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stinson v. United States*, 508 U.S. 36, 45 (1993); *see also United States v. Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012) (quoting *Stinson* to support the proposition that "a change in the language of an applicable Guidelines provision, including a change in application notes or commentary, supersedes prior decisions applying earlier versions of that provision, just as we would be bound to apply the updated version of an agency rule or regulation").

A court may only impose a sentence reduction that is consistent with the applicable Guidelines policy statement (here, § 1B1.10). 18 U.S.C. §§ 3582(c)(1)(A)(ii), 3582(c)(2); *see*

*also Dillon*, 560 U.S. at 821. Section 1B1.10(a) states that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if . . . [the amendment] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. Manual § 1B1.10(a)(2). The Application Note of subsection (a) defines "applicable guideline range" as "the guideline range that . . . is determined before consideration of any departure provision in the Guidelines Manual or a variance." U.S.S.G. Manual § 1B1.10, cmt. n. 1(A). Although this commentary defines the phrase for purposes of § 1B1.10(a), the Court "detect[s] no reasoning that would overcome the presumption that the same definition applies when determining the 'applicable' Guidelines range for purposes of § 1B1.10(b)." *United States v. Steele*, 714 F.3d 751, 755, n.2 (2d Cir. 2013). Additionally, as discussed by the Second Circuit, the "amended guideline range" is simply the "applicable guideline range" after a retroactive amendment has been applied—there is the "applicable guideline range" at the time of the original sentencing and the "applicable guideline range" after the amendment is applied, and the phrase "amended guideline range" refers to the latter. *United States v. Montanez*, 717 F.3d 287, 293 (2d Cir. 2013). Accordingly "courts should use the same procedure to calculate both the applicable guideline range and the amended guideline range, departing from that procedure in the case of the amended guideline range only to 'substitute . . . the [relevant guideline] amendments.'" *Id*. (alteration in original) (quoting U.S.S.G. Manual § 1B1.10(b)(1)). Thus, after considering the applicable retroactive amendment, the "amended guideline range" does not include departures or variances. *Id.* (noting that in determining the amended guideline range, courts should not consider any departures or variances).

Similarly, the Application Note of subsection (b)(2) is illustrative in demonstrating that departures and variances are not "guideline application decisions" that are part of the "amended

guideline range." This Application Note provides examples of how the amended guideline range is to be calculated. U.S.S.G. Manual § 1B1.10, cmt. n. 3. The example discussing original sentences that were "outside the guideline range applicable to the defendant at the time of sentencing" because of downward departures or variances clarifies that such downward adjustments do not carry over into the new sentence that may be imposed pursuant to a retroactive Guidelines amendment. *Id.*

Finally, the commentary to Amendment 759, which enacted the 2011 amendments to § 1B1.10, explains that departures and variances are not included in the "applicable guideline range," which means they are not included in the "amended guideline range." The "Reason for Amendment" provided by the Sentencing Commission in promulgating the amendment explained that it issued the amendment, in part, to resolve a circuit split over whether the "applicable guideline range" includes any departures.[4] U.S.S.G. Manual App'x C, Amend. 759, Reason for Amendment, at 421 (2011). The Sentencing Commission noted that some circuits applied certain departures, particularly departures under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category), in determining the applicable guideline range, whereas other circuits did not. *Id.* Thus, the amendment "amends Application Note 1 to clarify that the applicable guideline range referred to in § 1B1.10 is the guideline range determined pursuant to § 1B1.1(a), which is determined before consideration of *any* departure provision in the Guidelines Manual or *any* variance." *Id.* (emphasis added). Defendant argues that this comment is irrelevant because the circuit split did not involve the issues raised in this case and instead involved departures under § 4A1.3. The amendment, however, was not constrained to

---

[4] Courts may properly rely on the Reason for Amendment to interpret an amendment. *See United States v. Boyd*, 721 F.3d 1259, 1263-64 (10th Cir. 2013).

that one departure, but was made more broadly to clarify that the "applicable guideline range" does not include *any* departures or *any* variances.

The commentary's interpretation that "guideline application decisions" and "amended guideline range" do not include departures and variances is not plainly erroneous or contrary to the regulation, or, as discussed further below, unconstitutional or contrary to statute. Accordingly, it is given controlling weight.

### 2. Text and context of previous version of § 1B1.10

The interpretation that departures and variances are not "guideline application decisions" that are included in the "amended guideline range" is further supported by considering the text and context of the previous version of § 1B1.10, before the 2011 amendment. Defendant's interpretation under this version of § 1B1.10 would again render certain provisions surplusage and arguably meaningless. The previous version contained the same provisions instructing courts to leave "guideline application decisions" unaffected in § 1B1.10(b)(1) and foreclosing the court from reducing a sentence to a term that is less than the minimum of the "amended guideline range" in § 1B1.10(b)(2)(A). U.S.S.G. Manual § 1B1.10 (2010). But the previous version had different text in § 1B1.10(b)(2)(B), instructing that on modification, reductions comparable to original departures "may" be appropriate but that reductions comparable to original variances "generally would not be appropriate." U.S.S.G. Manual § 1B1.10(b)(2)(B) (2010). Thus, under the previous version of § 1B1.10(b)(2)(B), a court had the discretion in modifying a sentence to apply, or not to apply, departures or variances that had originally been applied. If departures and variances were "guideline application decisions" that were required to remain unaffected, then the court would have no need of the "discretion" to apply departures and variances because they already would need to be included, and the discretion not to apply them would run afoul of the directive to leave "guideline application decisions" unaffected. The fact that the current version

of § 1B1.10(b)(2) removes the Court's discretion to consider variances and departures other than for substantial assistance does not convert departures and variances into "guideline application decisions" that are part of the "amended guideline range."

### 3. Case law

The Eleventh Circuit, in an unpublished opinion, recently considered and rejected the precise argument that Defendant makes here. *United States v. Pierce*, 616 F. App'x 410, 411 (11th Cir. 2015) (per curiam). The defendant in *Pierce* argued that "§ 1B1.10(b)(2) here nullifies what § 1B1.10(b)(1) requires to be left 'unaffected' because [the defendant] will not receive the benefit of a downward variance comparable to the one he received at his original sentencing." *Id.* The Eleventh Circuit rejected this argument, finding that "the variance from which Pierce seeks to benefit and application of which was barred by § 1B1.10(b)(2) was not a 'guideline application decision,' as variances are imposed after the applicable guideline range is set." *Id.*; *but see United States v. Shrewder*, 2015 WL 6123754, at *1 (N.D. Ohio Oct. 16, 2015) (noting without analysis that "[i]n order to leave all other guideline application decisions unaffected, this Court applies the same enhancements and departures applied by [the original sentencing judge]").

Other Circuits have also found that departures and variances are not a "guideline application decision" or are not to be included in the "amended guideline range." *See, e.g.*, *United States v. Hogan*, 722 F.3d 55, 60 (1st Cir. 2013) ("Thus, Application Note 1 prohibits courts from applying departures prior to the determination of the amended guideline range in a proceeding for a sentence reduction under 18 U.S.C. § 3582(c)(2)."); *United States v. Boyd*, 721 F.3d 1259, 1260-64 (10th Cir. 2013) (analyzing the text and commentary of § 1B1.10 and associated provisions and concluding that a downward departure was not an "application decision" that remains "unaffected" but "is to be disregarded in calculating the defendant's

amended guideline range"); *Montanez*, 717 F.3d at 292 (analyzing the text of § 1B1.10 and its

commentary and concluding "[c]onsequently, the 'amended guideline range,' as the 'range that

would have been applicable to the defendant' had the relevant amendments been in effect, does

not incorporate any departure a court previously granted under [the departure provision at issue

in the case]"); *United States v. Valdez*, 492 F. App'x 895, 899 (10 Cir. 2012) (finding that the

Application Notes to § 1B1.10 foreclose the argument that departures or variances are "guideline

application decisions" because "they make it clear that the 'guideline range' affected by a

§ 3582(c)(2) proceeding is the range calculated *before* any departure or variance from the

Guideline calculation" (emphasis in original)).

Although the Ninth Circuit has not yet directly considered whether departures and

variances are "guideline application decisions," it has determined that they are not included in

the "applicable guideline range." *See United States v. Pleasant*, 704 F.3d 808, 812 (9th Cir.) *cert.*

*denied,* 134 S. Ct. 824 (2013) ("In short, Amendment 759 makes clear that the applicable

guideline is derived pre-departure and pre-variance."). If departures and variances were

"guideline application decisions," they would necessarily be included in the amended "applicable

guideline range" (or "amended guideline range"). Thus, the Ninth Circuit's conclusion that

departures and variances are not included in the "applicable guideline range" forecloses the

argument that they are "guideline application decisions" or that they should be included in the

"amended guideline range."

In considering the previous version of § 1B1.10, courts also found that application of

original departures and variances is not required when modifying a sentence under § 3582(c)(2),

and thus they are not "guideline application decisions" that must remain unaffected. *See, e.g.*,

*United States v. Vautier*, 144 F.3d 756, 761 (11th Cir. 1998) (holding that "a district court, ruling

on a defendant's § 3582(c)(2) motion, has the discretion to decide whether to re-apply a downward departure for substantial assistance when considering what sentence the court would have imposed under the amended guideline. . . . Thus, whether to consider a downward departure in determining what sentence the court would have imposed under the amended guideline remains discretionary, and the court is not bound by its earlier decision at the original sentencing to depart downward from the sentencing guidelines range."); *United States v. Wyatt*, 115 F.3d 606, 610 (8th Cir.1997) ("A discretionary decision to depart from the Guidelines range on the basis of substantial assistance made at the original time of sentencing is not a 'guideline application decision' that remains intact when the court considers the new Guideline range. The district court's discretionary decision of whether to depart from the new amended Guidelines range based upon Wyatt's prior substantial assistance is not dictated or mandated by either its prior decision to depart or by the extent of the prior departure . . . . The district court retains unfettered discretion to consider anew whether a departure from the new sentencing range is now warranted in light of the defendant's prior substantial assistance." (citation omitted)). This interpretation remains consistent with the current text of § 1B.10.

### 4. Conclusion

Considering the text and context of § 1B1.10 and its commentary, court decisions interpreting the current and previous version of § 1B1.10, and the canons of constructions, the Court concludes that departures and variances are not "guideline application decisions" and are not included in the "amended guideline range." Defendant's arguments to the contrary are rejected.

## B. Whether §1B1.10(b)(2) Conflicts with the Sentencing Commission's Statutory Directive

Defendant also argues that §1B1.10(b)(2) conflicts with Sentencing Commission's statutory directive in 28 U.S.C. § 991(b), which states:

(b) The purposes of the United States Sentencing Commission are to:

(1) establish sentencing policies and practices for the Federal criminal justice system that:

(A) assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code;

(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

(C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process . . . .

28 U.S.C. § 991(b). Defendant contends that by permitting courts to grant sentence reductions to people who did not receive variances and departures other than for substantial assistance but requiring courts to deny reductions to people who did receive such variances and departures, this provision nullifies the determinations previously made by the sentencing court and creates unwarranted disparities.

In *United States v. Tercero*, the Ninth Circuit considered whether § 1B1.10, and particularly its prohibition on consideration of variances and departures other than for substantial assistance, conflicted "with the purpose of the Guidelines . . . . to bring about an effective, fair sentencing system, with honest, uniform and *proportionate* sentences." 734 F.3d 979, 983 (9th Cir. 2013) (quotation marks omitted) (emphasis added). The defendant in *Tercero* argued that § 1B1.10(b)(2) conflicted with this purpose because it precluded the district court from revising the defendant's sentence to reflect the minor role she had played, which resulted in a downward departure at her original sentencing. The Ninth Circuit rejected this argument, finding that:

It is not in dispute, however, that when the district court originally sentenced Tercero, it *did* consider the sentencing factors set forth in § 3553(a). A motion brought under § 3582(c)(2) "does not authorize a sentencing or resentencing proceeding. Instead, it provides for the modification of a term of imprisonment by giving courts the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." *Dillon*, 130 S.Ct. at 2690. "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 2691. The procedural posture of this case makes it inappropriate for us to reweigh the sentencing factors set forth in § 3553(a) to assess the fairness of Tercero's 70-month sentence.

*Id.* at 983 (emphasis in original). The court also emphasized that the Sentencing Commission has been given a substantial role with respect to sentence modifications, tasked with deciding whether to amend Guidelines and to what extent an amendment will be retroactive, and given "the power to issue policy statements to address, among other things, 'the appropriate use of . . . the sentence modification provisions set forth in' § 3582(c)." *Id.* (alteration in original) (quoting 18 U.S.C. § 994(a)(2)(C)). The Ninth Circuit thus concluded that "the revisions to § 1B1.10 fall squarely within the scope of Congress's articulated role for the Commission." *Id.* at 983-84.

The Court is bound by this Ninth Circuit precedent. Defendant attempts to distinguish *Tercero,* arguing that it analyzed whether § 1B1.10 conflicted with the purpose of the Guidelines, not whether § 1B1.10 conflicts with 28 U.S.C. § 991(b) and, particularly, its prohibition against sentencing disparities. The Court finds this to be a distinction without substantial difference. Although *Tercero* did not expressly cite to § 991(b), it analyzed, and rejected, the argument that § 1B1.10 conflicted "with the purpose of the Guidelines . . . ." *Id.*, at 983. The purposes of the Guidelines are directed by § 991(b), including the goal of eliminating sentencing disparity. *See, e.g.*, *Dorsey v. United States*, 132 S. Ct. 2321, 2333 (2012) (citing and

quoting 28 U.S.C. § 991(b)(1)(B) for the proposition that "purposes of Guidelines-based sentencing include 'avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct'"); *Chapman v. United States*, 500 U.S. 453, 473 (1991) (J. Stevens, dissenting) (noting that "one of the central purposes of the Sentencing Guidelines . . . was to eliminate disparity in sentencing"); *United States v. Banuelos-Rodriguez*, 215 F.3d 969, 983 (9th Cir. 2000) ("A central goal of the Sentencing Guidelines is to eliminate sentencing disparity. The purpose of the Sentencing Commission was to establish guidelines that 'avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.' 28 U.S.C. § 991(b)(1)(B)."). Thus, *Tercero's* conclusion that § 1B1.10 does not conflict with the purpose of the Guidelines implies that § 1B1.10 does not conflict with § 991(b).

Additionally, whatever the label placed on it, the substance of the argument in *Tercero* was the same as Defendant raises here—that § 1B1.10(b)(2)'s prohibition on considering departures and variances results in unfair and disproportionate sentences. The Ninth Circuit's reasoning in rejecting this argument was not based on the text of § 3553(a). The Ninth Circuit considered the broad power of the Sentencing Commission to establish sentence modification limitations, the limited scope of § 3582(c) proceedings, and the fact that at original sentencing a defendant received the benefit of consideration of all departures and variances in concluding that it is "inappropriate" for a court to "reweigh" the § 3553(a) factors in considering a sentence modification. That reasoning is equally applicable to Defendant's argument that § 1B1.10(b)(2) conflicts with § 991(b).

Based on binding Ninth Circuit precedent, the Court finds that the limitation in § 1B1.10(b)(2)(A) precluding consideration of variances and non-cooperation departures in the

context of a sentence modification under 18 U.S.C. § 3582(c) does not conflict with 18 U.S.C. § 991(b).

## C. Whether the Policy Statement Violates Equal Protection

The previous version of § 1B1.10(b)(2) gave courts considering a sentence reduction the discretion to impose variances and departures comparable to those that were imposed during the original sentencing. U.S.S.G. Manual § 1B1.10(b)(2) (2010). The current version of § 1B1.10(b)(2) eliminates this discretion and prohibits a court from reducing sentences based on previously-imposed variances and non-cooperation departures. Defendant argues that this creates two classes of persons—those who did not originally receive any variances or non-cooperation departures and thus are eligible for a reduction, and those whose eligibility for a reduction is constrained because they originally received variances or non-cooperation departures. Defendant argues that there is no rational purpose for distinguishing between these two classes and no rational relationship between prohibiting consideration of variances and non-cooperation departures and a legitimate government purpose. As stated above, rational-basis review is quite narrow and Defendant faces a heavy burden to disprove the rationality of the relationship between the change to § 1B1.10(b)(2) and any "reasonably conceivable" rational basis.

Defendant argues that the classification in §1B1.10(b) is analogous to classifications that have been held to violate equal protection, such as classifications granting presentence credits to persons convicted of crimes with a statutory minimum and denying those credits to persons convicted of crimes that do not carry a statutory minimum (*Dunn v. United States*, 376 F.2d 191 (4th Cir. 1967) and *Myers v. United States*, 446 F.2d 232 (9th Cir. 1971)) and classifications granting presentence credits to adults but not juveniles (*Jonah R. v. Carmona*, 446 F.3d 1000 (9th Cir. 2006)). These cases are distinguishable.

The cases involving presentence credits being given for crimes with a mandatory minimum sentence but not for crimes without a mandatory minimum are distinguishable for several reasons. First, it is a reasonable assumption that crimes with a mandatory minimum sentence are more serious than crimes that do not have a mandatory minimum. *See Dunn*, 376 F.2d at 193-94 (noting that it "would be an arbitrary discrimination to credit a defendant with presentence custody upon conviction of an offense of a magnitude requiring the imposition of a minimum mandatory sentence, but to withhold such credit when the offense is not so grave as to require a minimum term of imprisonment"). Although Defendant argues that members of the class of inmates who did not receive any departures or variances are "more dangerous" and "less deserving" of a reduction, Defendant has not shown that offenders who did not receive downward departures or variances are necessarily more dangerous or less deserving than offenders who did receive such departures and variances. The Court declines to so broadly paint the entire class. Departures and variances are given for many different reasons and are not necessarily an indication that an offender is less dangerous than an offender who did not receive a departure or variance.

Defendant also fails to prove that offenders convicted of only the most "grave" offenses will receive the benefit of retroactive sentence reductions. Persons convicted of "grave" offenses may have received departures or variances that render them ineligible for a reduction under Amendment 782, whereas persons convicted of lesser crimes may not have received any departures or variances, rendering them eligible.

Second, the provision of presentence credits to offenders convicted of crimes with mandatory minimum sentences was required under the applicable statute and was automatic. *See Dunn*, 376 F.2d at 193 ("Denial of [presentence custody] credit . . . where others guilty of crimes

of the same or greater magnitude *automatically* receive credit, would entail an arbitrary discrimination within the power and hence the duty of the court to avoid." (emphasis added)). Here, whether to allow a sentence reduction, even to those inmates who qualify under § 1B1.10, is a discretionary decision made by the judge considering the sentence reduction.

Third, the interpretation that the statute prohibited presentence credits to any offenders other than those convicted of a crime with a mandatory minimum sentence was a constrained reading of the statute. The statute was enacted because although it was the uniform practice of courts to allow presentence credits to offenders convicted of crimes that did not have a mandatory minimum sentence, some courts prohibited such credits to offenders who were convicted of crimes with a mandatory minimum sentence because those courts were concerned allowing such credits would conflict with the statutory minimum. *See id.* at 193. Accordingly, Congress enacted a statute clarifying that presentence credits were to be given to offenders convicted of crimes with a mandatory minimum sentence. *Id.* This was intended to expand the availability of presentence credits to offenders convicted of crimes with mandatory minimum sentences, not to flip the situation so that such offenders were the only persons eligible for presentence credits while offenders who previously had uniformly been receiving the credits were no longer eligible. *Id.* No such strained interpretation is present in this case. The Sentencing Commission's decision to remove any consideration of variances and non-cooperation departures was "careful and deliberate." *Hogan*, 722 F.3d at 61.

Finally, Defendant and other offenders who received departures and variances have not been precluded from receiving the benefit of those departures and variances. They received full consideration of all possible departures and variances at the time of his original sentencing and the benefit of any that were granted to them. Sentence-modification proceedings are not "plenary

resentencing proceeding[s]." *Dillon*, 560 U.S. at 826. The fact that this class of offenders will not receive the benefit of comparable departures and variances in a resentencing proceeding does not detract from the fact that they already received that benefit in a lower original sentence. *See United States v. Berberena*, 694 F.3d 514, 521 (3d Cir. 2012) ("Rather than undo the effect of previous departures and variances, the Commission has merely limited the extent to which new ones can be awarded in § 3582(c)(2) proceedings.").

     *Jonah R.* is similarly distinguishable. That case turned on statutory interpretation, looking at the statute on presentence credits, the Federal Juvenile Delinquency Act, and the Youth Corrections Act to determine whether juveniles were eligible for presentence credits. 446 F.3d at 1103-05. After the federal District Court in the U.S. Virgin Island held that juveniles were not entitled to presentence credits, the Bureau of Prisons had changed its policy interpreting the relevant statutes as not permitting juveniles to receive presentence credits. *Id.* at 1002-03. The Ninth Circuit noted that it was not giving the ordinary "substantial deference" to the Bureau's interpretation because the agency did not argue for it, the revised interpretation contradicted previous interpretations, and the revised interpretation was based on a court case and not on agency expertise. *Id.* at 1006. The Ninth Circuit then determined whether juveniles were entitled to presentence credits by looking at the text, context, purpose, and legislative history of the relevant statutes. *Id.* at 1006-11. The Ninth Circuit also discussed a related statute that requires that presentence credit to be given to juvenile offenders convicted abroad and transferred to an American detention facility. *Id.* at 1007-08. The court then noted that "[i]t strains credulity . . . to think that Congress would intend to deal more harshly with juveniles unlucky enough to be arrested in the United States" and that "disparate treatment [of this sort] might well trigger equal protection concerns." Thus, the equal protection concern in *Jonah R.* was that juveniles who

were arrested in the United States would not receive presentence credit, while juveniles arrested abroad would receive such credit. This type of concern is not present here. There is no geographic disparity or other similar, irrational basis for distinguishing which offenders will be eligible for a reduction.

Defendant also argues that revised § 1B1.10(b)(2) creates irrational results.[5] Defendant offers the following scenario: Two defendants are convicted of the same crime, have similar

---

[5] Defendant relies on *Mellouli v. Lynch*, 135 S.Ct. 1980 (2015), to argue that these irrational results demonstrate that § 1B1.10(b) fails under rational-basis review. *Mellouli* did not involve an equal protection claim, but analyzed whether a misdemeanor conviction under a Kansas law prohibiting drug paraphernalia triggered deportation under 8 U.S.C. § 1227(a)(2)(B)(i). *Id.* at 1983-84. In 2009, the Bureau of Immigration Appeals ("BIA") had announced an interpretation of the relevant statutes that held that although state-law convictions for drug possession or distribution required the conviction be based on a federally-controlled substance under 21 U.S.C. § 802, drug paraphernalia offenses relate to the drug trade in general and thus need not be proven to be paraphernalia related to a substance listed under § 802. *Id.* at 1988. The Supreme Court found that this "disparate approach to state drug convictions" had "no home in the text of § 1227(a)(2)(B)(i)," led "to consequences Congress could not have intended," and arose from the BIA's "conflicting positions on the meaning of § 1227(a)(2)(B)(i)," which caused "the anomalous result that minor paraphernalia possession offenses are treated more harshly than drug possession and distribution offenses." *Id.* at 1989. The Supreme Court noted that it made "scant sense" that paraphernalia possession, "an offense less grave than drug possession and distribution," triggered removal regardless of whether the offense implicated a federally controlled substance, while the more serious crimes of drug possession and distribution only triggered removal if they implicated a federally-controlled substance. *Id.* ("The incongruous upshot is that an alien is *not* removable for *possessing* a substance controlled only under Kansas law, but he *is* removable for using a sock to contain that substance."). Based on its finding that BIA's interpretation made little sense, the Supreme Court held that the interpretation "is owed no deference under the doctrine described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). *Id.*

*Mellouli* is distinguishable from the case at bar. Unlike the BIA action in that case, the Sentencing Commission here does not have conflicting policy statements on this issue, made a deliberate decision to eliminate a court's discretion to apply variances and non-cooperation departures during a sentence reduction under § 3582(c)(2) based on stated concerns, and made the decision pursuant to the express grant of authority under 28 U.S.C. § 994(u), to "specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." Further, § 1B1.10 does not create a result not intended by the Sentencing Commission or by Congress. Additionally, *Mellouli* was not

criminal histories, and have identical guideline ranges; Defendant A is originally sentenced to a below-guidelines sentence, receiving a two-level downward variance because the judge found that Defendant A's history and characteristics warranted a lighter sentence; Defendant B is sentenced to the guidelines range because the judge determined a longer sentence was necessary to carry out the purposes of § 3553(a). In a §3582(c) sentence-modification proceeding, Defendant A is not eligible for an adjustment under § 1B1.10(b)(2) and Defendant B is, resulting in Defendant B receiving a two-level downward adjustment and ultimately receiving the same sentence as Defendant A, despite the original sentencing judge's belief that Defendant B deserved a longer sentence than Defendant A.

This scenario, however, does not demonstrate that prohibiting consideration of variances and non-cooperation departures fails rational-basis review. First, it is important to acknowledge that application of a sentence reduction pursuant to a retroactive Guidelines amendment is discretionary. It is therefore possible that a judge considering a reduction for Defendant B would not apply the sentence reduction, believing the original longer sentence is sufficient but not greater than necessary to carry out the purposes of § 3553(a). If that were the case, then there would be no unwarranted disparity between Defendants A and B.

Second, even if offenders such as Defendant B would have benefitted from Amendment 782 and would have received modified sentences that are no longer proportionally longer than the "less culpable" co-defendants, that result does not prove an equal protection violation under rational-basis review. Defendant's burden under rational-basis review is to show that there is no reasonably conceivable set of facts that could provide a rational basis for the Sentencing Commission's classification of persons eligible for a sentence reduction, not that

analyzing agency action under a rational-basis review, but was interpreting a statute and determining whether an agency's interpretation was entitled to deference.

there is a possible set of facts that show a potentially irrational result from that classification. *See Heller*, 509 U.S. at 320-21 (noting that the party challenging a classification must "negative every conceivable basis which might support it" and that a classification survives rational-basis review even if "in practice it results in some inequality") (quotation marks omitted).

The Sentencing Commission provided two general reasons for making the change and creating the new classification of persons eligible for a reduction.[6] First, the Sentencing Commission noted that the previous version of the policy statement's distinction between *departures*, which "may" be appropriate to apply when reducing a sentence, and *variances*, which would "generally not" be appropriate to apply when reducing a sentence was difficult to apply and prompted litigation. The Sentencing Commission believed that a single limitation that prohibits consideration of both variances and departures, except for substantial assistance departures, "furthers the need to avoid unwarranted sentencing disparities and avoids litigation. . . . [and] promotes conformity with the amended guideline range and avoids undue complexity and litigation." U.S.S.G. Manual App'x C, Amend. 759, Reason for Amendment, at 420 (2011). Second, the Sentencing Commission was "concerned that retroactively amending the guidelines could result in a windfall for defendants who had already received a departure or variance, especially one that took into account the disparity in treatment between powder and crack cocaine . . . ." *United States v. Davis*, 739 F.3d 1222, 1225 (9th Cir. 2014). Defendant

---

[6] As noted in *Navarro*, "under rational-basis review, the government actor generally need not 'actually articulate at any time the purpose or rationale supporting its classification.'" *Navarro*, 800 F.3d at 1113 n.8 (quoting *Armour v. City of Indianapolis, Ind.*, --- U.S. ---, 132 S.Ct. 2073, 2082 (2012)). As the Ninth Circuit did in *Navarro*, the Court here focuses on the governmental interests articulated by the Sentencing Commission because they are most easily addressed. For the reasons stated in Defendant's reply brief, however, the Court is not persuaded that the other purpose suggested in the government's brief, the need to avoid geographic disparities in sentencing, survives a rational-basis review.

argues that neither of these concerns rationally justify limiting sentence reductions for defendants with variances and non-cooperation downward departures.

### 1.  Reducing complexity, litigation, and disparities and promoting conformity

Defendant argues that the amended policy statement does not avoid undue complexity, litigation, or unwarranted disparity, and, to the contrary, creates more problems. Although the former version made a distinction between departures and variances, it left the application of both to the discretion of the judge. It also preserved the option of applying the original § 3553(a) factors. This approach, Defendant argues, promoted fairness and uniformity and avoided unwarranted disparity. The revised version, argues Defendant, increases the likelihood of litigation by purporting to remove the judge's discretion to apply comparable variances and non-cooperation departures and increases the risk of undue sentencing disparity by overriding many of the individualized decisions made by the original sentencing court after full analysis of the § 3553(a) factors.

Defendant has not met his burden to refute every "reasonably conceivable" basis that might support the Sentencing Commission's decision that eliminating all variances and non-cooperation departures avoids undue complexity and litigation. Although some litigation may be generated challenging the lawfulness of the policy statement, the actual application of the policy statement is straightforward. No variances or non-cooperation departures are permitted, rendering the modification calculation a relatively simple exercise. The Sentencing Commission's conclusion that eliminating variances and non-cooperation departures made sentencing modifications less complex and thereby would reduce litigation survives rational-bases review.

Additionally, the Sentencing Commission's conclusion that eliminating variances and non-cooperation departures would promote uniformity with the amended guideline range also

PAGE 28 – OPINION AND ORDER

survives review. Without departures and variances, the modified sentence necessarily will fall within the amended guideline range.

Regarding the objective of reducing disparity in sentences, although removing the option to consider any § 3553(a) factors or non-cooperation departures may result in some disparity in sentences, Defendant has not shown that there are no "reasonably conceivable state of facts" in which the amended policy statement reduces sentence disparity. *Beach Commc'ns*, 508 U.S. at 313. The question is not whether the policy statement is the best method or wisest policy for addressing the government's concern, but whether there is a rational connection between the Sentencing Commission's concern and the decision to preclude application of any variances or non-cooperation departures. It was rational for the Sentencing Commission to be concerned that retroactive Guidelines amendments may not be imposed uniformly. Although the Court recognizes that some disparities in sentencing will likely result from this policy statement, the Court is constrained by the scope of rational-basis review. It cannot be said that constraining the discretion of judges' to apply variances and non-cooperation departures has no rational connection to addressing the Sentencing Commission's concern regarding disparate sentences.

### 2.    Concern relating to "windfall" sentences upon modification

Defendant also argues that public testimony and statistical evidence show that the Sentencing Commission's "windfall" concern was unfounded. Defendant notes that the public testimony revealed that in general defendants would not get "windfalls" because judges had discretion in modifying a sentence to apply comparable departures and variances, and those judges who had originally varied from the guidelines range for policy reasons relating to the difference between powder and crack cocaine could deny any further sentence reduction. Defendant specifically points to testimony from the representative of the U.S. Department of Justice ("DOJ") commenting that judges depart for policy reasons to a small degree in "a very

narrow class of cases" and that the DOJ would not object to sentence reductions in other types of cases such as departures for overstated criminal history or variances for medical or mental health conditions. Def's Reply Br., Dkt. 257 at 13 (citing Tr. of Pub. Hr'g Before the U.S. Sentencing Comm'n at 49-52, 59-60, 61-62, 93, 101-12 (June 1, 2011)). Defendant further argues that even if such "windfalls" had been a problem, eliminating all reductions for variances and non-cooperation departures is not rationally related to that limited concern.

Under rational-basis review, the government's basis need not have a foundation in the record. *Heller*, 509 U.S. at 320; *see also Navarro*, 800 F.3d at 1114 (noting that the defendant's argument that there was insufficient evidence before the Sentencing Commission to conclude that Amendment 788's one-year delay was necessary before implementing Amendment 782 "misapprehends the scope of rational-basis review. Generally, 'the absence of legislative facts explaining the distinction on the record has no significance in rational-basis analysis.'" (quoting *Beach Commc'ns*, 508 U.S. at 315)). In fact, "rational-basis review allows for decisions 'based on rational speculation unsupported by evidence or empirical data.'" *Navarro*, 800 F.3d at 1114 (quoting *Beach Commc'ns.* 508 U.S. at 315).

Here, the Sentencing Commission's speculation that some offenders may have received a departure or variance to *de facto* adjust for a judge's belief that the crack cocaine drug guidelines were too high was rational. Eliminating consideration of all variances and non-cooperation reductions has some "rational connection" to this government interest.[7] Similarly, with respect to

---

[7] The Court shares the concern articulated by the Second Circuit, which questioned as a policy matter the Sentencing Commission's decision to address the "windfall" problem by completely eliminating a court's discretion to give the benefit of previously-applied departures and variances during sentencing reduction proceedings. *Montanez*, 717 F.3d at 294. The Second Circuit noted that the "policy adopted in § 1B1.10(b)(2)(A) sweeps much more broadly [than the windfall concern], affecting even defendants . . . who benefitted from departures that were unrelated to prior versions of the crack-cocaine guidelines." *Id.* But as recognized by the Second

Amendment 782, the Sentencing Commission could rationally speculate that some offenders may have received a departure or variance to adjust for a judge's belief that the drug guidelines were too high. This is all that is needed under rational-basis review, "regardless of whether [the policy statement] is an 'exact fit' for the interest at issue" or "is an imperfect fit between means and ends." *Navarro*, 800 F.3d at 1114. Although the Sentencing Commission's reasoning in eliminating all variances and non-cooperation departures will apply with greater force to those offenders who received variances and departures to adjust for the perceived unfairness of the drug guidelines than to those offenders who received variances and departures for other reasons, this fact alone does not render the decision constitutionally-deficient. *See id.* ("The fact that the Commission's reasoning will apply with greater force to some groups of inmates than to others does not invalidate its otherwise-valid decision.").

## D. Constitutional Avoidance

Defendant's final argument is that the Court need not resolve the equal protection challenge and strike §1B1.10's prohibition against consideration of variances and non-cooperation departures, but can instead apply the doctrine of constitutional avoidance. Defendant argues that he has raised "serious questions" regarding the constitutionality of interpreting § 1B1.10 as prohibiting consideration of variances and non-cooperation departures, and thus the Court should apply the doctrine of constitutional avoidance and interpret the policy statement so as to avoid these constitutional implications. Defendant argues this can be done by interpreting the term "amended guidelines range" to include previously-imposed variations and departures. Because the Court has not found a constitutional violation and does not find, under rational-basis

---

Circuit, "Congress has given the Commission the authority to resolve these policy questions." *Id.* Although the Sentencing Commission may have used a broad approach to address its "windfall" concern, Defendant has not shown that this approach does not have any rational connection to addressing potential "windfall" situations.

review, that serious questions arise regarding the constitutionality of § 1B1.10's prohibition on considering variances and non-cooperation departures, the Court declines to apply the doctrine of constitutional avoidance.

## CONCLUSION

Defendant's motion (Dkt. 230) to reduce his sentence under 18 U.S.C. § 3582(c)(2) is DENIED.

**IT IS SO ORDERED**.

DATED this 2nd day of December, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge